**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

CASE NO.: 6:22-bk-03123-LVV

**LEGACY POOLS, LLC**                      CHAPTER 11

*Subchapter V Election*

     Debtor.

_____/

### PLAN OF REORGANIZATION FOR LEGACY POOLS, LLC

COUNSEL FOR THE DEBTOR

DANIEL A. VELASQUEZ, ESQ.
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. ORANGE AVE., SUITE 1400
ORLANDO, FLORIDA 32801

---

**THE PLAN PROVIDES FOR INJUNCTIVE RELIEF TO PROTECT CERTAIN PERSONS, INCLUDING INSIDERS OF THE DEBTOR, WHO ARE PROVIDING VALUABLE SERVICES TO THE DEBTOR'S REORGANIZATION EFFORT AND TO THE CONSTRUCTION TRUST CREATED UNDER THE TERMS OF THIS PLAN. THE PERSON(S) SO PROTECTED, AND THE SCOPE OF THE INJUNCTION IS DEFINED IN ARTICLE VII(S) HEREOF. IF THE PLAN IS CONFIRMED ALL PERSON(S) SPECIFIED IN THESE PROVISIONS OF THE PLAN WILL BE ENTITLED TO THE PROTECTION PROVIDED BY THE INJUNCTION FROM THE CLAIMS OF ANY CREDITOR AND PARTY IN INTEREST IN THIS BANKRUPTCY CASES.**

---

October 3, 2022

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

                                            **CASE NO.: 6:22-bk-03123-LVV**

**LEGACY POOLS, LLC**                         **CHAPTER 11**

                                          *Subchapter V Election*

        **Debtor.**

_____/

### PLAN OF REORGANIZATION FOR LEGACY POOLS, LLC

      **LEGACY POOLS, LLC** (hereinafter referred to as the "**Debtor**" – where appropriate), by and through its undersigned counsel, hereby proposes the following *Plan of Reorganization* (the "**Plan**") pursuant to 11 U.S.C. §§ 1189 and 1190 of the United States Code (the "**Bankruptcy Code**").

## ARTICLE I – DEFINITIONS

      1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case in connection with preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Title 28 of the United States Code.

      2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

      3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.    **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.      **Allowed Priority Claim** means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

7.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

8.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.      **Appeal Period** means the time for filing a notice of appeal as specified in Rule 8002 of the Bankruptcy Rules.

10.     **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its respective Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation:  (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's' books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

11.     **Bankruptcy Case(s)** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Numbers 6:22-bk-03123-LVV.

12.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., including any amendments thereto, in effect during the Bankruptcy Cases.

13.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

14.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

15.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Case.

16.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

17.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

18.     **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments,

damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

19.    **Claim** means, "claim" as defined in Bankruptcy Code § 101(5).

20.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

21.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified in the Plan.

22.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129 and/or § 1191.

23.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

24.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

25.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

26.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

27.    **Creditor(s)** means "Creditor" as defined in Bankruptcy Code § 101(1).

28.    **Debtor** refers to Legacy Pools, LLC.

29.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

30.     **Disposable Income** shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).

31.     **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

32.     **Disputed Equity Interest** shall mean an Interest in the Debtor which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

33.     **Distribution** means a distribution under the terms of the Plan to the Holders of Allowed Claims.

34.     **Effective Date** means the first Business Day following expiration of the Appeal Period with respect to the Confirmation Order without the filing of a notice of appeal of the Confirmation Order; provided, however, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may elect in writing to permit the Effective Date to occur notwithstanding the pendency of the appeal. The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

35.     **Estate(s)** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

36.     **Equity Interest** means any and all issued or authorized equity interests, common stock, stock options, membership interests and warrants in the Debtor.

37.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

38.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022 closing the Bankruptcy Case after the Estate has been fully administered.

39. **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

40. **Holder** means the holder of a Claim or Interest, as applicable.

41. **Inflation Adjustment** means the additional payment obligation established the Debtor to finish projects for beneficiaries of the Construction Trust, which amount is memorialized in a written addendum to the Debtor's Construction Agreement and subject to further adjustment as the case may be.

42. **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

43. **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

44. **Interest(s)** means an issued or authorized outstanding equity interest, membership interest, warrant or warrants for the issuance of such equity interests, or any other equity instruments in the Debtor.

45. **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with stand to bring such challenge.

46. **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

47. **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

48. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or

unexpired leases shall not be an Ordinary Course Administrative Claim.

49.     **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

50.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

51.     **Personal Property** means all tangible personal property of the Debtor.

52.     **Petition Date** means August 30, 2022, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

53.     **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

54.     **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

55.     **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

56.     **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

57.     **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

58.     **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

59.     ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

60.     **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or

1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

61.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

62.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

63.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

64.     **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.

65.     **Retained Assets** shall mean all Estate Assets except for the Returned Assets.

66.     **Returned Assets** shall mean those certain assets which, as set forth further in Article V are being returned to a respective Lien holder as the indubitable equivalent of their respective Secured Claim.

67.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

68.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

69.     **Subchapter V Trustee** means Robert Altman who was appointed pursuant to 11 U.S.C. § 1183.

70.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

71.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

72.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

On August 30, 2022, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Orlando Division. Robert Altman has been appointed as the Subchapter V Trustee for the Debtor's bankruptcy case and the Debtor continues to operate and manage its business as a debtor-in-possession.

### *Description of the Debtor's Business Operations*

Legacy Pools is a closely held Florida limited liability company organized on August 24, 2017 which conducts business from a leased warehouse/office located at 727 North Drive, Suite L, Melbourne Florida 32934. The Debtor launched its business in 2017 specializing in the design of luxury pools and then began work in 2018 constructing in-ground luxury pools and spas, positioning itself in the market as a high-volume pool builder achieving first-year sales of over one hundred and thirty (130) pools.

At the height of the Debtor's popularity it was directly impacted by COVID-19 which caused major disruptions to the Debtor's business and the swimming pool construction industry as a whole. During the First Quarter of 2020, Debtor's production slowed due to a decrease in demand, and its projects were delayed as employees became sick and social distancing measures were put in place at job sites. In addition, as the economy suffered and layoffs became prominent, customers began slow

paying or not paying their required contractual progress payments which further impacted Debtor's financial condition.

### ***Events Leading to Bankruptcy Filing***

Supply chain issues further hampered the Debtor's operations and caused significant material cost increases. For each of its pool projects, Debtor utilizes a wide array of raw materials including PVC, lumber, and concrete to fulfill its customers' contracts. The raw materials used by the Debtor in nearly every project have been on backorder since the middle of 2020, and when available, these materials are often triple their pre-pandemic price. These supply chain delays, shortages and cost increases have directly impacted Debtor's ability to meet its construction timelines and client demands. The increased cost of raw materials contributed to a significant increase in the Debtor's overhead, which already included an average annual payroll budget of $1.6 million for its 32-employees.

Due to supply chain issues, increasing material costs, slow paying customers, and other disruptions caused by the pandemic, it quickly became difficult for the Debtor to meet its overhead obligations. To bridge the gap and aid its ability to pay its operating expenses, Debtor entered into two (2) separate merchant cash advance lending arrangements with MCA Servicing Company and Samson MCA, LLC (collectively, the "MCA Providers"). Unfortunately, rather than aid the Debtor's ability to meet its ongoing obligations, the MCA Providers bilked the Debtor of available operating funds which compounded the Debtor's poor financial condition.

Faced with ongoing litigation, the prospect of additional lawsuits, potential licensing issues, and creditor collection efforts, Debtor elected to pursue Chapter 11 relief to restructure its financial affairs for the benefit of its various stakeholders and continue the operation of its pool construction business. Shortly after the Petition Date, Debtor employed Daniel A. Velasquez and the law offices of Latham, Luna, Eden & Beaudine, LLP to facilitate its reorganization efforts.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Secured Claims.

    1.    Class 1 – Allowed Secured Claim of Ally Financial (2021 Ford F150 SuperCrew Platinum – VIN #: 1FTFW1E51MKD18870).

    2.    Class 2 – Allowed Secured Claim of Ally Financial (2018 Ford F-150 King Ranch – VIN #: 1FTEW1C54JKE77666).

    3.    Class 3 – Allowed Secured Claim of Ascentium Capital, LLC (2015 Freight Liner – VIN #: 1FVACXDU7FHGD4629).

    4.    Class 4 – Allowed Secured Claim of Ford Motor Credit (2018 Ford F-150 SuperCrew – VIN#: 1FTEW1CP1FKD04115).

    5.    Class 5 – Allowed Secured Claim of Ford Motor Credit (2018 Ford F-150 SuperCrew Cab King Ranch – VIN #: 1FTEW1C53JFC47044).

    6.    Class 6 – Allowed Secured Claim of Ford Motor Credit (2017 Nissan Frontier CrewCab SL – VIN #: 1N6DD0EV1HN768947).

    7.    Class 7 – Allowed Secured Claim of Ford Motor Credit (2020 Ford Expedition Max Platinum Sport Utility – VIN #: 1FMJKMT6LEA08535.

    8.    Class 8 – Allowed Secured Claim of Keystone Equipment Finance Corporation.

    9.    Class 9 – Allowed Claim of MCA Servicing Company.

    10.    Class 10 – Allowed Claim of Samson MCA, LLC.

    11.    Class 11 – Allowed Secured Claim of U.S. Bank Equipment Finance (Office Copier).

    12.    Class 12 – Allowed Secured Claim of the U.S. Small Business Administration.

B.    Unsecured Claims.

    1.    Class 13 – Allowed General Unsecured Creditors of Legacy Pools, LLC.

C.    Equity Interests.

    1.    Class 14 – Equity Interests in Legacy Pools, LLC.

# ARTICLE IV – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.    Administrative Expense Claims.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from cash on hand, through pre- and post-petition retainers or monthly installments paid pursuant to Bankruptcy Court order, proceeds from the Debtor's continued operation and collection on accounts receivable or proceeds from any Cause of Action pursued by the Debtor. The Debtor estimates Administrative Claims to be approximately $40,000.00 before deducting pre-petition retainers.  It is anticipated that the Administrative Claims will be held by the Debtor's bankruptcy counsel and the Subchapter V Trustee.

B.    Priority Claims Against Legacy Pools, LLC.

1.    Allowed Priority Tax Claims Against Legacy Pools, LLC.

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payment(s) equal to the Allowed Amount of such Claim over a period extending not later than 5 years after the Petition Date. Payment on account of Allowed Priority Tax Claims will commence on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed. The filed amount of Priority Tax Claims is currently $4,342.28 on account of estimated corporate and FICA and FUTA taxes. Based on Debtor's losses throughout the 2022 tax year, Debtor does not anticipate corporate income taxes and believes the amount of Allowed Priority Tax Claims will not exceed $4,342.28.

2.      Allowed Priority Claims Against Legacy Pools, LLC.

Except to the extent that the Holder and the Debtor has agreed or may agree to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall receive (at the Debtor's election): (i) payment of such Claim in full on the Effective Date; (ii) payment over a period not extending later than 5 years after the Petition Date; (iii) or the date on which such Priority Claim becomes Allowed. The filed amount of Priority Claims is currently $16,425.00. Debtor does not believe the amount of Allowed Priority Claims will exceed $45,000.00.

3.      United States Trustee Fees.

If applicable, all fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course. The Debtor, which is proceeding under Subchapter V, does not anticipate the accrual of any United States Trustee Fees in connection with the Bankruptcy Case.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES.

A.      Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. The designations and

labeling used in each Class of Claims to describe the treatments therein are not conclusive and are not to be construed as final determinations of the type or amount of such Claim.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section I, of this Plan, and other applicable law.

There are fourteen (14) Classes of Claims and Interests.  Treatment for these classes is as follows:

B.    Secured Claims.

1.    Class 1 – Allowed Secured Claim of Ally Financial (2021 Ford F150 SuperCrew Platinum – VIN #: 1FTFW1E51MKD18870).

Class 1 consists of the Allowed Secured Claim of Ally Financial ("Ally").

Ally's Class 1 Claim is secured by a **2021 Ford F150 SuperCrew Platinum** [VIN#: **1FTFW1E51MKD18870]** (the "8870 Vehicle"). In full satisfaction of its Allowed Class 1 Claim, Ally shall retain its lien on the 8870 Vehicle, and shall receive payment of its Allowed Class 1 Claim, minus any payments received after the Petition Date (if any), in full of the sale proceeds received by Debtor from the sale of the 8870 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 8870 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 8870 Vehicle, Ally shall receive the 8870 Vehicle as the indubitable equivalent of its Allowed Secured Class 1 Claim. Upon payment in full or receipt of the 8870 Vehicle, the Allowed Class 1 Claim of Ally shall be fully satisfied. Class 1 is Impaired.

2.    Class 2 – Allowed Secured Claim of Ally Financial (2018 Ford F-150 King Ranch – VIN #: 1FTEW1C54JKE77666).

Class 2 consists of the Allowed Secured Claim of Ally Financial ("Ally").

Ally's Class 2 Claim is secured by a **2018 Ford F-150 King Ranch** [VIN#: 1FTEW1C54JKE77666**]** (the "7666 Vehicle"). In full satisfaction of its Allowed Class 2 Claim, Ally

shall retain its lien on the 7666 Vehicle, and shall receive payment of its Allowed Class 2 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 7666 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 7666 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 7666 Vehicle, Ally shall receive the 7666 Vehicle as the indubitable equivalent of its Allowed Secured Class 2 Claim. Upon payment in full or receipt of the 7666 Vehicle, the Allowed Class 2 Claim of Ally shall be fully satisfied. Class 2 is Impaired.

3.    <u>Class 3 – Allowed Secured Claim of Ascentium Capital, LLC (2015 Freightliner – VIN #: 1FVACXDU7FHGD4629)</u>.

Class 3 consists of the Allowed Secured Claim of Ascentium Capital, LLC ("Ascentium"). Ascentium's Class 3 Claim is secured by a **2015 Freightliner** [VIN#: 1FVACXDU7FHGD4629] (the "4629 Vehicle"). In full satisfaction of its Allowed Class 3 Claim, Ascentium shall retain its lien on the 4629 Vehicle, and shall receive payment of its Allowed Class 3 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 4629 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 4629 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 4629 Vehicle, Ascentium shall receive the 4629 Vehicle as the indubitable equivalent of its Allowed Secured Class 3 Claim. Upon payment in full or receipt of the 4629 Vehicle, the Allowed Class 3 Claim of Ally shall be fully satisfied. Class 3 is Impaired.

4.    <u>Class 4 – Allowed Secured Claim of Ford Motor Credit (2018 Ford F-150 SuperCrew – VIN#: 1FTEW1CP1FKD04115)</u>.

Class 4 consists of the Allowed Secured Claim of Ford Motor Credit ("Ford"). Ford's Class 4 Claim is secured by a **2018 Ford F-150 SuperCrew** [VIN#:

1FTEW1CP1FKD04115] (the "4115 Vehicle"). In full satisfaction of its Allowed Class 4 Claim, Ford shall retain its lien on the 4115 Vehicle, and shall receive payment of its Allowed Class 4 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 4115 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 4115 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 4115 Vehicle, Ford shall receive the 4115 Vehicle as the indubitable equivalent of its Allowed Secured Class 4 Claim. Upon payment in full or receipt of the 4115 Vehicle, the Allowed Class 4 Claim of Ford shall be fully satisfied. Class 4 is Impaired.

5.      Class 5 – Allowed Secured Claim of Ford Motor Credit (2018 Ford F-150 SuperCrew Cab King Ranch – VIN #: 1FTEW1C53JFC47044).

Class 5 consists of the Allowed Secured Claim of Ford Motor Credit ("Ford").

Ford's Class 5 Claim is secured by a **2018 Ford F-150 SuperCrew Cab King Ranch** [VIN#: 1FTEW1C53JFC47044] (the "7044 Vehicle"). In full satisfaction of its Allowed Class 5 Claim, Ford shall retain its lien on the 7044 Vehicle, and shall receive payment of its Allowed Class 5 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 7044 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 7044 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 7044 Vehicle, Ford shall receive the 7044 Vehicle as the indubitable equivalent of its Allowed Secured Class 5 Claim. Upon payment in full or receipt of the 7044 Vehicle, the Allowed Class 5 Claim of Ford shall be fully satisfied. Class 5 is Impaired.

6.      Class 6 – Allowed Secured Claim of Ford Motor Credit (2017 Nissan Frontier CrewCab SL – VIN #: 1N6DD0EV1HN768947).

Class 6 consists of the Allowed Secured Claim of Ford Motor Credit ("Ford").

Ford's Class 6 Claim is secured by a **2017 Nissan Frontier CrewCab SL** [VIN#:

1N6DD0EV1HN768947] (the "8947 Vehicle"). In full satisfaction of its Allowed Class 6 Claim, Ford shall retain its lien on the 8947 Vehicle, and shall receive payment of its Allowed Class 6 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 8947 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 8947 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 8947 Vehicle, Ford shall receive the 8947 Vehicle as the indubitable equivalent of its Allowed Secured Class 6 Claim. Upon payment in full or receipt of the 8947 Vehicle, the Allowed Class 6 Claim of Ford shall be fully satisfied. Class 6 is Impaired.

      7.     <u>Class 7 – Allowed Secured Claim of Ford Motor Credit (2020 Ford Expedition Max Platinum Sport Utility – VIN #: 1FMJKMT6LEA08535</u>.

      Class 7 consists of the Allowed Secured Claim of Ford Motor Credit ("Ford"). Ford's Class 7 Claim is secured by a **2020 Ford Expedition Max Platinum Sport Utility** [VIN#: 1FMJKMT6LEA08535] (the "8535 Vehicle"). In full satisfaction of its Allowed Class 7 Claim, Ford shall retain its lien on the 8535 Vehicle, and shall receive payment of its Allowed Class 7 Claim, minus any payments received after the Petition Date (if any), in full from the sale proceeds received by Debtor from the sale of the 8535 Vehicle, which sale Debtor will endeavor to complete within 90 days of the entry of the Confirmation Order. In the event Debtor is unable to sell the 8535 Vehicle within 90 days from the entry of the Confirmation Order, or elects not to sell the 8535 Vehicle, Ford shall receive the 8535 Vehicle as the indubitable equivalent of its Allowed Secured Class 7 Claim. Upon payment in full or receipt of the 8535 Vehicle, the Allowed Class 7 Claim of Ford shall be fully satisfied. Class 7 is Impaired.

      8.     <u>Class 8 – Allowed Secured Claim of Keystone Equipment Finance Corporation</u>.

      Class 8 consists of the Allowed Claim of Keystone Equipment Finance Corporation ("Keystone") which is secured by certain equipment owned by the Debtor. In full

satisfaction of its Class 8 Claim, Keystone shall receive the equipment which secures its lien as the indubitable equivalent of its Allowed Claim. Class 8 is Impaired.

9.    Class 9 – Allowed Claim of MCA Servicing Company.

Class 9 consists of the Allowed Claim of MCA Servicing Company ("**MCA**"). Pursuant to Bankruptcy Code Section 506, the Class 9 Claim of MCA is wholly unsecured. Thus, on the Effective Date, all mortgages/liens (if any) held by the Class 9 Claimant shall be extinguished and, to the extent MCA retains an Allowed Claim, such Claim shall be treated as an Allowed Unsecured Claim pursuant to the terms of Class 13. Class 9 is Impaired.

10.    Class 10 – Allowed Claim of Samson MCA, LLC.

Class 10 consists of the Allowed Claim of Samson MCA, LLC ("**Samson**"). Pursuant to Bankruptcy Code Section 506, the Class 10 Claim of Samson is wholly unsecured. Thus, on the Effective Date, all mortgages/liens (if any) held by the Class 10 Claimant shall be extinguished and, to the extent Samson retains an Allowed Claim, such Claim shall be treated as an Allowed Unsecured Claim pursuant to the terms of Class 10. Class 10 is Impaired.

11.    Class 11 – Allowed Secured Claim of U.S. Bank Equipment Finance (Office Copier).

Class 11 consists of the Allowed Claim of U.S. Bank Equipment Finance ("U.S. Bank") which is secured by certain equipment owned by the Debtor. In full satisfaction of its Class 11 Claim, U.S. Bank shall receive the equipment which secures its lien as the indubitable equivalent of its Allowed Claim. Class 11 is Impaired.

12.    Class 12 – Allowed Secured Claim of the U.S. Small Business Administration.

Class 12 consists of the Allowed Secured Claim of the U.S. Small Business Administration (the "SBA"). In full satisfaction of its Allowed Class 12 Claim, the SBA shall retain its lien and either (a) receive all Estate Assets subject to its Lien in Debtor's possession on the Effective Date as the indubitable equivalent of such portion of the Class 12 Claim; or (b) the

proceeds of liquidation of accounts receivable and other Estate Assets subject to the SBA's Lien. To the extent the SBA elects to have the Debtor administer and collect on the SBA collateral, the Debtor and SBA will first reach agreement as to the fees and costs which will be paid to Debtor from such liquidation for its services. SBA shall have an Allowed Class 13 Claim to the extent its Allowed Class 12 Claim exceeds the value of the collateral subject to its Lien. Class 12 is Impaired.

    C.    <u>Unsecured Claims</u>.

        1.    <u>Class 13 – Allowed General Unsecured Claims Against Legacy Pools, LLC</u>.

        Class 13 consists of all Allowed General Unsecured Claims against the Debtor held by parties who elect to **NOT PARTICIPATE** as a beneficiary of the Construction Trust established below in Article VI, Section D. In full satisfaction of their Allowed Class 13 General Unsecured Claims, Holders of Class 13 Claims shall receive annual *pro rata* distributions of the Debtor's Disposable Income on November 30th of each year over a term of three (3) years from the Effective Date after Administrative Claims and Priority Claims are satisfied in full. The first Distribution of Disposable Income (if any) under the Plan will occur on November 30, 2023. In addition to the receipt of Debtor's Disposable Income, Class 13 Claimholders shall receive a *pro rata* share of the net proceeds recovered from all Causes of Action after payment of professional fees and costs associated with such collection efforts, and after Administrative Claims and Priority Claims are paid in full. The maximum Distribution to Class 13 Claimholders shall be equal to the total amount of all Allowed Class 13 General Unsecured Claims. Class 13 is Impaired.

    C.    <u>Equity Interests</u>.

        1.    <u>Class 14 – Equity Interests in Legacy Pools, LLC</u>.

        Class 14 consists of all equity interests in Legacy Pools, LLC. Class 14 Interest Holders shall retain their respective Interests in Legacy Pools, LLC in the same proportions

such Interest were held as of the Petition Date (*i.e.*, 100.00% Interest to Charles Black). Class 14 is Unimpaired.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

A.    <u>Assumption or Rejection of Unexpired Leases and Executory Contracts</u>.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 13 General Unsecured Claims, respectively, except as otherwise provided herein. The Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Debtor's position is that the executory contracts listed on its Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date. To the extent a counter-party to a executory contract elects to not participate in the Construction Trust, such counter-party's executory contract with the Debtor shall be deemed rejected as of the entry of the Confirmation Order.

## ARTICLE VI – MEANS OF IMPLEMENTATION.

A.    <u>Business Operations.</u>

The Plan contemplates the Debtor will continue to manage and operate its business in the ordinary course, but with restructured debt obligations, reduced overhead, and fewer assets.  It is anticipated that the Debtor's continued operations will mainly involve pool design and construction

management services, any Disposable Income from such operations will be committed to make the Plan Payments.

As it pertains to Causes of Action, Debtor has done an initial investigation by reviewing its books and records and has identified several preference actions and three (3) construction lien foreclosure cases it intends to pursue post-confirmation. The potential recoveries from the Causes of Action could exceed $500,000.00; although recoveries through litigation are uncertain. Debtor will continue to review its financial affairs and determine if there are any viable Causes of Action within ninety (90) days of the Effective Date. Any such identified Cause of Action or potential Cause of Action shall be disclosed to all creditors and parties in interest prior to such period of time and are otherwise preserved as set forth in this Plan.

B.    <u>Funds Generated During Chapter 11</u>.

Funds generated from the Debtor's operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses. For a complete report detailing the funds generated from the Debtor's operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in the Bankruptcy Case. A copy of the Debtor's monthly operating reports are also available upon request to the Debtor's undersigned counsel.

C.    <u>Management and Control and Operation of the Debtor</u>.

The management and operations of the Debtor will continue to be overseen by the Debtor's current President, Mr. Charles Black, who will continue to cultivate the Debtor's existing customer base and improve and provide design support for the Debtor's product offerings. The powers of the officers of the Reorganized Debtor shall be substantially the same as they were prior to the Petition Date.

In the event of a liquidation of the Debtor's estate in Chapter 7, Mr. Black would likely conclude his management and involvement with the Debtor which would dramatically affect

the Debtor's business relationships with its current customers and hinder its ability to finish projects for those customers participating in the Construction Trust.

     D.    <u>The Construction Trust</u>.

       The Plan contemplates that, upon entry of the Confirmation Order, a Construction Trust will be formed for the benefit of those customers of the Debtor (referred to individually as a "Construction Trust Beneficiary") who elect to participate in the Construction Trust to have their pool projects completed, and who also agree to pay their respective Inflation Adjustment into the trust account (the "Construction Trust Account") of Debtor's counsel, Latham Luna Eden & Beaudine, LLP for use in connection with the completion of their pool. All Inflation Adjustment funds deposited into the Construction Trust Account will be retained by Debtor's counsel in trust until directed and authorized by the Construction Trust Beneficiary to release such funds to the Reorganized Debtor, or directly to sub-contractors procured by the Reorganized Debtor as the case may be, upon receipt of written certification of completion of all work assigned to such sub-contractor or the Debtor.

       The Construction Trust will be overseen and administered by the Debtor's President, Mr. Charles Black, the Debtor's Vice-President, Mrs. Kristin Black, and Debtor's bankruptcy counsel. Mr. and Mrs. Black will utilize their respective expertise in the construction industry to secure sub-contractors to complete pool projects for the Construction Trust Beneficiaries electing to participate in the Construction Trust. In connection with his work on behalf of the Construction Trust, Mr. and Mrs. Black will be entitled to compensation from the Construction Trust in the amount of $1,500.00 weekly (gross before taxes), and Latham Luna Eden & Beaudine, LLP ("Latham Luna") (as Administrator of disbursements from the Construction Trust Account) will be entitled to a 5.00% fee which shall be factored into every Inflation Adjustment payment. To the extent there is any conflict, dispute or issue with respect to the operation of the Construction Trust, Mr. Black, Mrs. Black, Latham Luna, or the Trust Beneficiaries as the case may be, may submit such dispute to the

Subchapter V Trustee who will serve as mediator for any conflict or dispute. In the event the conflict, dispute or issue cannot be resolved following mediation with the Subchapter V Trustee, such matter shall be submitted to the Bankruptcy Court who shall retain exclusive jurisdiction to resolve any and all disputes concerning or relating to the Construction Trust.

Latham Luna shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Construction Trust Beneficiaries upon reasonable notice and without unduly interfering with the operations of Latham Luna. Further, no recourse shall ever be had, directly or indirectly, against the Debtor, its officers or directors, or any employee of the Debtor, Mr. Black, Mrs. Black or Latham Luna by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Debtor, Mr. Black, Mrs. Black, or Latham Luna under the Plan or by reason of the creation of any indebtedness by the Debtor, Mr. Black or Latham Luna under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Construction Trust, and its administrators, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Construction Trust Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Construction Trust assets, as the case may be; and every undertaking contract, covenant, or agreement entered into in writing by or on behalf of the Construction Trust shall expressly provide and be the exclusive personal liability of the Construction Trust.

The administrators of the Construction Trust shall not be liable for any act he or she may do or omit to do hereunder while acting in good faith and in the exercise of his or her best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for an administrator of the Construction Trust shall be conclusive evidence of such good faith and best judgment. Notwithstanding the foregoing, this paragraph shall not apply to any gross

negligence or willful misconduct by the Construction Trust or is agents and administrators; and nothing in this paragraph abrogates the Construction Trust's obligation to comply with the Internal Revenue Code, if applicable.

Each party's election to participate as a beneficiary of the Construction Trust shall be set forth in writing in the customized ballot to accept or reject the Debtor's Plan. Those party's electing to participate as a beneficiary of the Construction Trust will not be entitled to a recovery pursuant to the treatment afforded to Class 13 General Unsecured Creditors, and instead, will be deemed to have waived any claim such party may have retained against the Debtor prior to the Petition Date.

      E.    <u>Procedures for Resolving Disputed Claims</u>.

      1.    <u>Prosecution of Objections to Claims</u>.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor, or Reorganized Debtor as the case may be, shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either of the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan,

upon Confirmation the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.      Allowance of Claims and Interests.

(i)      Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.  Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(ii)      Allowance of Claims.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the

Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

6.       <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan and designation of impairment shall govern.

## <u>ARTICLE VII – MISCELLANEOUS</u>.

A.       <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

B.       <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.     Preservation, Prosecution, and Defense of Causes of Action.

Except as set forth herein, upon Confirmation, the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor or Bankruptcy Estate, except as otherwise modified by the Plan.  The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and post-judgment collections; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtor deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deems such action to be in the best interest of creditors without Bankruptcy Court or other approval. At this time, Debtor do not believe there are any Causes of Action to pursue; however, their investigation of potential Causes of Action is ongoing.

D.     Retention of Professionals.

The Reorganized Debtor may retain and compensate professionals on such terms as it deems reasonable without Bankruptcy Court approval.

E.     Conditions to Effectiveness.

The Effective Date shall occur upon the conditions set forth in this Plan.  However, the Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the

appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.  The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met. The Reorganized Debtor shall file a *Notice of Effective Date* with the Bankruptcy Court within three (3) days of the Effective Date.

F.    Police Power.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

G.    Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

H.    Modification of Plan.

The Debtor may seek to amend or modify the Plan in accordance with § 1193 of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take

any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

    I.    <u>Retention of Jurisdiction</u>.

    After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

    1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

    2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained by the Debtor by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

    3.    Any adversary proceedings or contested matters or other Causes of Action brought by the Debtor or the Reorganized Debtor, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 13 Claims;

4.      All controversies and disputes arising under or in connection with the performance of obligations created under the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1193, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor or concerning or relating to the performance of obligations created under the Plan.

J.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

K.      <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

Debtor reserves its right to confirm using cramdown procedures set forth under 11 U.S.C. §§ 1129(b) and 1191(b).

L.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

<u>Counsel for Legacy Pools, LLC</u>:

Daniel A. Velasquez, Esq.
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801

<u>United States Trustee</u>:

Office of the United States Trustee

c/o Bryan E. Buenaventura, Esq.
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

<u>Subchapter V Trustee</u>:

Robert Altman
P.O. Box 922
Palatka, FL 32178

M.    <u>Manner of Payment</u>.

The Subchapter V Trustee shall make all payments and distributions required under the terms of this Plan only if the plan is confirmed under 1191(b). If the Plan is confirmed under 1191(a), the Reorganized Debtor shall make such payments. Any fees and expenses incurred by the Subchapter V Trustee in connection with the distribution of Plan Payments shall be detailed in annual fee applications (the "Annual Fee Reports") filed with the Court on negative notice.  Upon approval of the fees and costs detailed in the Subchapter V Trustee's Annual Fee Reports, the approved fee and expense awards shall be deducted from, and charged against, the Distributions made by the Subchapter V Trustee in accordance with the terms of the Plan.

N.      Compliance with Tax Requirements.

In connection with this Plan, and to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

O.      Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for

the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records. If any Distribution is returned by mail or otherwise, the Reorganized Debtor may keep said returned Distribution money.

      P.    <u>Distribution of Unclaimed Property</u>.

      Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 1 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 1 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Debtor and remitted to the Middle District of Florida Bankruptcy Pro Se Clinic at the Reorganized Debtor's election.  Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Claim with respect to the check originally issued.

      Q.    <u>Transfer Taxes</u>.

      Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any

such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

R.    Default and Remedies of Allowed Claimholders.

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtor and the Subchapter V Trustee with written notice of said payment default (the "Default"). The Debtor shall have fifteen (15) Business Days from receipt of the Default notice to cure the Default. If the Debtor fails to timely cure the Default, the Allowed Claimholder may seek relief from the Bankruptcy Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law or as stated elsewhere in the Plan. Allowed Claimholders shall seek relief from the Bankruptcy Court first before filing for relief in any other competent jurisdiction.

S.    Conditional Temporal Injunction.

1.    Protected Parties.

Charles Black is the President of Legacy Pools, LLC and has been involved in all material aspects of the Debtor's operation since inception. (Mr. Black is referred to herein as the "**Protected Party**"). With the assistance of the Protected Party, the Debtor's assets are, and will continue to be, managed to achieve positive cash flow that will provide a clear economic benefit to creditors and homeowners who desire to have their pool projects completed. Debtor believes the Protected Party has and is continuing to contribute significant value to the Debtor's estate, and will continue to contribute value to the Reorganized Debtor and the Construction Trust created herein based upon the following:

(a)    The Protected Party has managed the ongoing business operations of the Debtor since the Petition Date for no compensation and, will continue to support and seek approval of the Plan and assist the Debtor through Confirmation of the Plan for no compensation;

(b)    The Protected Party will devote and utilize his time, resources, industry knowledge, and business contacts toward the successful completion of all Plan obligations for the benefit of all creditors and the homeowners participating in the Construction Trust who desire to have their pool projects completed.

(c)    The Debtor and the Protected Party agree that any applicable statute of limitations period and/or pending proceedings pertaining to a claim held by an enjoined party against the Protected Party will be tolled and/or abated during the term of the Plan such that the claims of any enjoined party against a non-debtor third-party will not be impaired.

In consideration of the substantial contributions made and to be made by the Protected Party, the Plan contemplates a broad third-party conditional temporal injunction in favor of the Protected Party for the term of the Plan against claims arising out of and deriving from the business operations and financial affairs of the Debtor so long as the Debtor is performing under the Plan.

2.    <u>Basis for Injunction</u>.

The Plan is premised upon the injunction contained below. Debtor asserts the injunction described herein is given as consideration for the accommodations provided by the Protected Party under the plan and is fair consideration for, as the case may be, for valuable services provided in support of the Plan and the Debtor's reorganization effort. The Debtor believes that unless the injunction outlined herein is binding on all parties through confirmation of the Plan, depletion of the Debtor's assets and human resources would result along with the accumulation of claims against the Estate and the reduction of distributions to creditors under the Plan. To the extent the Protected Party is burdened and distracted by ongoing litigation, it is likely the Debtor's financial affairs will be significantly impaired, the Debtor's financial affairs will not be restructured, the goals of the Construction Trust will not be fulfilled, and the Debtor will not successfully reorganize.

3.   Terms of Injunction.

*EXCEPT AS EXPRESSLY PROVIDED HEREIN, OR TO OTHERWISE ENFORCE THE TERMS OF THE PLAN, AS OF THE CONFIRMATION DATE ALL PERSONS LISTED ON DEBTOR'S SCHEDULE H (Doc. No. 23, p. 74) AND ALL LITIGATION PLAINTIFF'S WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, OTHER DEBT OR LIABILITY AGAINST THE PROTECTED PARTY WHICH AROSE OR WAS INCURRED IN CONNECTION WITH THE OPERATION OF DEBTOR'S BUSINESS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ARE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS FOR SO LONG AS THE REORGANIZED DEBTOR IS NOT IN DEFAULT OF ANY OBLIGATION UNDER THE PLAN OR ANY AGREEMENTS CONTEMPLATED BY THE PLAN, ON ACCOUNT OF ANY SUCH IMPAIRED OR TERMINATED CLAIMS, DEBTS OR LIABILITIES, INTERESTS OR RIGHTS:*

*(I)      COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING AGAINST THE PROTECTED PARTY OR THEIR PROPERTY INTERESTS, OTHER THAN TO ENFORCE ANY RIGHT PURSUANT TO THE PLAN;*

*(II)     ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE PROTECTED PARTY OR HIS PROPERTY INTERESTS OTHER THAN AS PERMITTED PURSUANT TO (I) ABOVE;*

*(III)    CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE PROTECTED PARTY OR HIS PROPERTY INTERESTS;*

*(IV)     ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE PROTECTED PARTY; AND*

*COMMENCING OR CONTINUING ANY ACTION AGAINST THE PROTECTED PARTY, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN. FROM AND AFTER THE CONFIRMATION*

*DATE, THE INJUNCTION DESCRIBED HEREIN SHALL BECOME EFFECTIVE AND ALL HOLDERS OF CLAIMS AND INTERESTS SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY OF THE ACTIONS DETAILED HEREIN FOR SO LONG AS THE REORGANIZED DEBTOR AND THE PROTECTED PARTY REMAIN IN COMPLIANCE WITH THE PLAN AND ANY AGREEMENTS CONTEMPLATED BY THE PLAN, AND EXCEPT AS SPECIFICALLY PROVIDED FOR IN THE PLAN.*

## VIII.    <u>CONCLUSION</u>

If the Plan is ***not*** confirmed and consummated, the Debtor believes the most likely alternative is a liquidation of its assets under Chapter 7 of the Code. In a Chapter 7 liquidation, the Debtor's operations would cease as a Chapter 7 trustee appointed in such case would likely be unable to operate the Debtor's service-based operation. In a Chapter 7 scenario, the Debtor's revenue opportunities would be lost along with the value of its goodwill and business holdings. Further, a Chapter 7 trustee would incur additional Administrative Expenses that would be paid before any distribution to creditors and would result in no additional value to claimholders after a significant devaluation of the Debtor's assets. A liquidation of the Debtor's estate would also result in additional rejection damages claims which would dilute the recoveries to all creditors.

In light of the foregoing, Debtor believes that liquidation of its assets in a Chapter 7 case would dramatically reduce the value of Distributions to Creditors as compared to reorganization under this Plan in Chapter 11. As such, the Debtor recommends that holders of Claims and Interests vote to accept the Plan. Please refer to the liquidation analysis attached hereto as **<u>Exhibit "A"</u>** for an overview of potential distributions to creditors in the event of a Chapter 7 liquidation of the Debtor's Estate.

**RESPECTFULLY SUBMITTED** this 3rd day of October 2022.

/s/ Daniel A. Velasquez
**Daniel A. Velasquez, Esq.**
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorney for Legacy Pools, LLC*

# EXHIBIT "A"

**LEGACY POOLS, LLC**
**CASE NO: 6:22-bk-03123-LVV**

**Comparative Liquidation Analysis**

| Asset | Chapter 7 Liquidation | Plan of Reorganization |
|---|---|---|
| Cash | $0.00 (1) | Not Liquidating |
| Operations Revenue | $0.00 (2) | $500,000.00 (3) |
| Going Concern Value | $0.00 (4) | Equivalent to Operations Revenue |
| Causes of Action | Unknown | Unknown |
| Personal Property | $80,000.00 est. (6) | $170,000.00 est. (7) |
| **Total Value** | **$80,000.00** | **$670,000.00** |
| Administrative Ch. 7 | $20,000.00 | $0.00 |
| Administrative Ch. 11 | $50,000.00 | $40,000.00 |
| Priority Tax, Wage and Administrative Claims | $45,000.00 | $45,000.00 |
| **Total Estimated Payout To Allowed General Unsecured Claims** | **($0.00)  (8)** | **Projected recovery on allowed claims through reorganization $585,000.00 approx.** |

(1) Estimated balance as of the assumed conversion date of September 30, 2022 with no incoming client payments due to liquidation.
(2) It is assumed a Chapter 7 trustee would be unable to continue operations of the Debtor's business due to their lack of client relationships and technical knowledge, and without the aid of the Debtor's officers.
(3) Estimated Disposable Income Payments pursuant to the Debtor's Plan based on new sales and revenues received through the Construction Trust.
(4) It is assumed a Chapter 7 trustee would be unable to continue operation of the Debtor's business due to their lack of client relationships and technical knowledge.
(6) Assumed liquidation value of the Debtor's personal property in its current condition.
(7) Liquidation value with representatives of the Debtor managing the administration of assets and collection efforts.
(8) Current creditor claims would be diluted by additional rejection damages claims following the liquidation of the Debtor.

***In light of the foregoing comparative analysis, Debtor submits that a liquidation of its assets will result in a significant loss of value and reduction in returns to general unsecured creditors.***